**UNITED STATES of America,**
**Appellant,**

v.

**Roy O. DISNEY and Edna F. Disney,**
**Appellees.**

**No. 22483.**

United States Court of Appeals
Ninth Circuit.

June 19, 1969.

**784**

Edward Lee Rogers (argued), Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Albert J. Beveridge, III, Attys., Dept. of Justice, Washington, D. C., of counsel, Wm. Matthew Byrne, Jr., U. S. Atty., Loyal E. Keir and Robert T. Jones, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

Carl A. Stutsman, Jr. (argued), Albert L. Burford, Jr., Albert L. Burford, Jr., Jack R. White, of Hill, Farrer & Burrill, Los Angeles, Cal., for appellees.

Before HAMLEY, DUNIWAY and HUFSTEDLER, Circuit Judges.

HAMLEY, Circuit Judge:

The United States appeals from a district court judgment, reported at 267 F. Supp. 1, awarding the taxpayers, Roy and Edna Disney, husband and wife, a refund of overpayments of federal income taxes for the tax years 1962 and 1963. The asserted overpayments, amounting to $3,154.09, resulted from the refusal of the Commissioner to allow the taxpayers to exclude from gross income, or to deduct as ordinary and necessary business expenses, amounts received by the husband from his employer as reimbursement for travel expenses incurred in taking his wife on certain of his business trips.

During the years in question, Disney was president, chairman of the board, a director and a member of the executive committee of Walt Disney Productions (company). The company, a publicly held corporation engaged in producing "family-type" entertainment, derives its income primarily from theatrical distribution of motion pictures. However, its business also includes the operation of Disneyland Park, "character" merchandising (children's clothing, dolls and games modeled after Disney characters), the publishing of music, books and magazines, and the distribution of sixteen-millimeter motion picture films to schools and other nontheatrical markets.

The company, with subsidiaries, representatives and licensees in fifty-eight foreign countries, does business on a world-wide basis. Disney and other company executives are required to make periodic business trips within the United States and abroad in furtherance of the company's far-flung operations. The trips involve not only business meetings, conferences and conventions attended primarily by men, but also screenings, receptions, press conferences, dinners and numerous business-oriented social engagements which women also attend.

In 1962 and 1963, the Disneys, who live in southern California took three trips abroad and one trip within this country. In January, 1962, they spent three weeks in New York, Paris and London. Mr. Disney's primary purposes in making the trip were to meet with a gathering of company sales forces in London and Paris, and to hold screenings of the company's products for exhibitors.

Late in 1962, Disney made a three-month world tour on company business, his wife again accompanying him. They were accompanied by Mrs. Disney's brother-in-law and sister, the Vogels, who traveled at their own expense since the trip was a vacation for them. While the Disneys took some side trips with the Vogels, the trial court found that these trips were incidental to Mr. Disney's business purpose in making the world tour; they were taken on week-

ends and days when persons with whom Mr. Disney wished to transact business were not available.

In 1963, the Disneys traveled to New York and Europe between January 4 and February 14. For Mr. Disney this was another business trip on behalf of the company. In addition to his normal activities on this trip, Disney attended conferences dealing with problems of operating and selling in the Common Market, and he and his wife attended a publishers' convention in Italy.

Finally, in August, 1963, the Disneys made a trip to Colorado, Wisconsin and New York, along with Disney's brother, Walt, and the latter's wife. Disney attended several business meetings in this country. While in New York, Disney was called upon to make an unexpected business trip to London. Mrs. Disney remained in New York, and her expenses during this period were excluded by the district court from the amount of the judgment for refund of overpaid taxes.

With respect to all of the foregoing trips the company made advances or reimbursements to cover the travel expenses of Mr. and Mrs. Disney. The Disneys kept careful records of their expenditures and made accountings to the company for each of the trips, segregating what they regarded as business expenses from those which they believed to be purely personal. They reimbursed the company for all personal expenditures and their refund claim includes no amounts so classified by them.

There is no dispute over the fact that these trips were business trips for Mr. Disney, nor over the fact that the expenses the company paid for Mrs. Disney were deductible by it as business expenses. It is the tax treatment, on the Disney's tax return, of the money paid for Mrs. Disney's expenses which is the subject of this litigation.

The trial court found that for many years it has been a company policy that executives take their wives with them on extended business trips. The company, the court found, has virtually insisted on the wive's presence on trips taken by executives where it is believed their presence would enhance the company's "image," or would otherwise promote its interest. Consistent with this policy the company has, over a long period of years, paid the expenses of executives' wives incurred in accompanying their husbands on the latter's business trips.

The trial court found that Mrs. Disney's presence on the trips described above was in conformity with this corporate policy. The court further found that Mrs. Disney's presence on these trips served to enhance the corporate image and that on these trips she assisted her husband in his business activities. In particular, the court found:

"15. On such trips there may be newspaper interviews and photographs in which Mrs. Disney appears with her husband. Management of the company believes her presence invites additional publicity for women's pages, and enhances the image of the company as a disseminator of family entertainment. Mrs. Disney also attends various dinners, social functions, film screenings, and other gatherings of employees, exhibitors, distributors, other business associates, the press, and the public."

The record indicates that on these trips Mrs. Disney did not perform any duties of a business-office nature, such as acting as her husband's secretary. Nor did she attend daytime business meetings. She spent much of her day in her hotel room or shopping, and attended to such matters as the care of her husband's laundry, taking telephone calls at their hotel rooms, and the performance of other activities of a "wifely" character, as Mrs. Disney put it.

On the other hand, the record shows that a considerable amount of Mrs. Disney's time was spent in the company of her husband on social and other occasions attended by business men and women with whom the company dealt. With her husband, Mrs. Disney attended various events at which women were present—luncheons, dinners, film screenings, and meetings of employees, exhibi-

tors, distributors, business associates, the press, and the public. She helped entertain at the social gatherings, made arrangements for some functions, and invited guests. Mrs. Disney was present and was interviewed at press conferences and made good-will visits to people in the industry.

The record indicates that there is a special feeling of fellowship among people in show business throughout the world. Reciprocal entertainment and social contact on business trips are expected and are important factors in building and maintaining good will. This largely accounts for the company's policy of asking that when its executives travel, they be accompanied by their wives.

In addition, the record reveals that Walt Disney Productions is regarded as being somewhat unique in the motion picture and entertainment business in that it specializes in providing "wholesome entertainment" designed to appeal to the entire family. Many of its pictures are based upon the ideals of Americanism and the home. Since executives identified with the company are frequently in the public eye, its management believes that the company's special image will be enhanced if its representatives travel with their wives.

Strictly speaking, two questions are presented on this appeal. The first is whether amounts which the company paid to Disney to cover the foreign travel expenses of his wife are includible in the taxpayers' gross income. The second is whether, if includible, the taxpayers may deduct such amounts as ordinary and necessary business expenses. The trial court, answering the first of these questions, held that the amounts in question need not be included in the Disneys' gross income and awarded judgment for them on that ground. The court therefore did not reach the second question referred to above, although most of its findings of fact are relevant to both questions.

■ We prefer to turn first to the deductibility question and will therefore assume, for present purposes, that the amounts Disney received from the company to defray the travel expenses of Mrs. Disney should have been included in gross income. We hold that, under the special circumstances of this case, these amounts were deductible as ordinary and necessary business expenses within the meaning of section 162 of the Internal Revenue Code of 1954 (Code), and affirm on that ground.

Section 162 of the Code provides, in part:

"(a) In general,—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \*

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business . . .." [1]

The treatment of expenses incurred by a taxpayer's wife, while accompanying her husband on a business trip, is dealt with in section 1.162–2(c) of the regulations, which reads as follows:

"(c) Where a taxpayer's wife accompanies him on a business trip, expenses attributable to her travel are not deductible unless it can be adequately shown that the wife's presence on the trip has a bona fide business purpose. The wife's performance of some incidental service does not cause her expenses to qualify as deductible business expenses. \* \* \* "

We begin with the basic premise that, in order for the expenses to be deducti-

I. As a corollary, section 262 of the Int. Rev.Code of 1954 provides:

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

ble, they must be ordinary and necessary in connection with the business of Mr. Disney, and not ordinary and necessary in connection with the business of the company which employs him. Treas. Reg. § 1.162–2(a) (1958) provides, in part:

> "Only such traveling expenses as are reasonable and necessary in the conduct of the *taxpayer's* business and directly attributable to it may be deducted." (Emphasis supplied.)

In Patterson v. Thomas, 5 Cir., 289 F.2d 108, 112, the court said:

> "At the outset, it is important to note that the nature of the trip must be determined from the individual taxpayer's point of view, rather than from the viewpoint of his employer."

We think this is also true with respect to the nature of the expense incurred in the course of a taxpayer's business trip.

■ Our task, then, is to determine whether the implicit finding of the district court to the effect that Mrs. Disney's presence on the described business trips of Mr. Disney had a bona fide purpose with respect to his business, amounting to more than the rendition of some merely incidental service, is clearly erroneous.[2]

The district court found, and the record shows, that Mr. Disney's business purpose in taking these trips was to perform duties resting upon him as chief executive officer of the company. These duties included the holding of meetings with the company's sales forces, the holding of screenings of the company's products for exhibitors, attendance at conferences dealing with marketing problems and attendance at trade conventions. Mr. Disney was also expected to promote the public image of the company as one engaged in family-type en-

tertainment, to enhance the morale and enthusiasm of company representatives, and to cultivate close and cordial relationships between his company and the exhibitors and other executives with whom the company dealt throughout the world.

The trial court found, and the record shows, that, in order to fulfill these latter duties, it was necessary for Mr. Disney to have his wife with him at various luncheons, dinners, receptions, film screenings, press conferences and on good-will visits. Not only was her presence at these events important, but her assistance in making arrangements for various functions was also necessary.

The necessity for Mrs. Disney's presence on these business trips is established not only by Mr. Disney's own determination but also by a long-standing company policy that the wives of company executives should accompany their husbands on such trips. This policy was backed up by the company's equally long-standing practice of defraying the travel expenses of wives accompanying their executive husbands on such trips.

Had Mr. Disney occupied a less powerful executive position with the company, the necessity of taking his wife on the trips would have been dictated by employer insistence amounting almost to a condition of employment. Another executive of the company, performing the same duties on such trips, would at least have been warranted in concluding that disregard of this firm company policy might jeopardize advancement in the company.

Of course Mr. Disney was at the top of the company and he would not have risked loss of his position had he taken these trips alone. Under the circumstances, however, he was warranted in

---

2. The clearly-erroneous rule, Rule 52(a), Federal Rules of Civil Procedure, is applicable in tax cases, and the burden thereunder placed upon a party challenging the findings extends to the factual inferences drawn by the trial court from the undisputed facts. Rudolph v. United States, 370 U.S. 269, 270, 82 S.Ct. 1277, 8 L.Ed.2d 484; C.I.R. v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218. In reviewing such findings, this court is required to take the view of the evidence most favorable to the prevailing party, in this case the taxpayers. Los Angeles Shipbuilding & Drydock Corp. v. United States, 9 Cir., 289 F.2d 222, 227.

deciding that he should himself conform to the company policy. In our opinion such conformance adequately establishes that Mrs. Disney's presence on these trips had a bona fide business purpose, tested by Mr. Disney's business purpose in making the trip.

The view just expressed is based upon the particular circumstances of this case. A variation in facts might well call for a difference in results. The fact that an employer may prefer to have an executive take his wife along is not controlling if her presence does not serve the taxpayer-employee's business purpose in making the trip. The fact that an employer defrays the travel expenses of the wife is not controlling, for this may, and frequently does, represent only a bonus for past business achievements by the employee.

On the other hand, the fact that the wife spends much of her time on such trips attending to such "wifely" duties as shopping, attending to laundry, answering the telephone and the like, does not necessarily require the conclusion that her presence does not have a bona fide business purpose. The critical inquiries are whether the dominant purpose of the trip was to serve her husband's business purpose in making the trip and whether she actually spent a substantial amount of her time in assisting her husband in fulfilling that purpose.

It is true that, on these trips, most of Mrs. Disney's activities in helping her husband fulfill some of his business purposes in making the trip were of a kind which she would normally engage in while they were both at home. But the added factor here is that the husband has, because of company policy, been put to the additional expense of paying his wife's travel expenses so that she could assist him in this way on the road. It is this distinction which accounts for the fact that, under the circumstances of this case, her travel expenses are deductible as ordinary and necessary business expenses, whereas her living expenses at home are not.

The parties have cited many cases in support of their respective positions on this deductibility problem. However, the result reached in an individual case is so dependent upon the peculiar facts of that case, that the decisions called to our attention are of only limited assistance.

The case which is apparently most comparable to ours on the facts is Warwick v. United States, E.D.Va., 236 F. Supp. 761. The taxpayer-husband there was vice-president of a tobacco company which had some large European customers; the company needed to retain relationships with the old customers as well as to find new ones. The importance of developing and retaining a special relationship with these customers was magnified by the fact that they bought in large quantities. The husband and his wife had established social relationships which were renewed every January and February when they went to Europe. While in Europe the wife did not attend business meetings but entertained, took tours of plants, did no sightseeing, and generally devoted her time to assisting her husband.

Following one trip the husband deducted his wife's travel expenses from gross income as an ordinary and necessary business expense. The next year the company established a policy of having the wife go along on trips to Europe and Latin areas (but not to the Far East) and paid her expenses. The district court held that the reimbursement expenses were includible in gross income but were deductible as ordinary and necessary business expenses.

The cases cited by the Government, most of which are discussed below, are distinguishable on the facts, or the facts are not sufficiently developed to permit useful comparison. In United States v. Gotcher, 5 Cir., 401 F.2d 118, the Volkswagen Company paid for trips for husband and wife to Germany. The husband had a bona fide business reason in making the trip to Europe, as his purpose was to decide whether to invest in a Volkswagen dealership in this country.

Thus, his reimbursed trip expenses were not taxable income to him. However, as far as his wife was concerned, the trip was primarily a vacation, and her expenses, paid by Volkswagen, were therefore taxable.

In Patterson v. Thomas, 5 Cir., 289 F.2d 108, and Rudolph v. United States, 5 Cir., 291 F.2d 841, certiorari dismissed as improvidently granted, 370 U.S. 269, 82 S.Ct. 1277, 8 L.Ed.2d 484, insurance salesmen were awarded trips to conventions because of their sales performances. The awards included the traveling expenses of the wives. In both *Patterson* and *Rudolph* the court held that the trip was primarily a pleasure trip for both husband and wife, and the expenses therefore were not deductible for either. Since the employee husband was not on a business trip there was no basis for holding that the wife had a bona fide business purpose in accompanying him.

In Alabama-Georgia Syrup Co. v. Commissioner, 36 T.C. 747, reversed on another issue *sub nom.* Whitfield v. Commissioner, 5 Cir., 311 F.2d 640, the question was not whether the employee could deduct the travel expenses of his wife, but whether his employer could deduct, as an ordinary and necessary business expense, amounts it paid the employee to defray the travel expense of the employee's wife. She helped him entertain when she accompanied him and sometimes made appointments for him. However, insofar as the Tax Court opinion reveals, there was in that case no extensive showing, as there is here, concerning the duties of the husband to cultivate personal relationships with business contacts, and numerous ways in which his wife assisted him in fulfilling such purposes, and the existence of a long-standing company policy, amounting almost to a requirement, that wives be taken on such trips.

The same may be said of Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, where the only testimony relied upon to show a bona fide business purpose of the wife's travel with her husband was to the effect that when she went to conventions with her husband she helped some of the women in attendance with their shopping, or in general was helpful to them. In any event, the question in *Challenge* related to the corporate deduction, not the employee's deduction.

In Moorman v. Commissioner, 26 T.C. 666, the employee's wife was a bookkeeper and stenographer, and she performed services for her husband in those capacities on trips she made with him. She also helped him with his entertainment of dealers and their wives. The Tax Court held, however, that the evidence was not sufficient to show that her services were necessary, although they may have been helpful. There is no way of determining from the Tax Court opinion how much time the wife devoted to her husband's work on these trips. Without this information we have no way of determining whether that case and the one before us are comparable on the facts. Kloppenburg v. United States, S.D.Ill., 17 AFTR 2d 507, involved only travel of a wife with her husband to attend a convention.

Affirmed.