**DANVILLE PLYWOOD CORPORATION, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 89–1478.

United States Court of Appeals, Federal Circuit.

March 21, 1990.

John Y. Merrell, Merrell & Merrell, P.C., McLean, Va., argued for plaintiff-appellant. With him on the brief were John Y. Merrell, Jr., and John C. Donovan.

Howard M. Soloman, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and Richard Farber.

Before MARKEY, Chief Judge, FRIEDMAN, Senior Circuit Judge, and MILLS, District Judge.*

RICHARD MILLS, District Judge.

Were these "entertainment expenses"?

Danville Plywood Corporation (Danville) appeals a decision by the United States Claims Court upholding the disallowance by the Commissioner of Internal Revenue

---

* Judge Richard Mills of the Central District of Illinois, sitting by designation.

(Commissioner) of $98,297.83 Danville claimed on its 1980 and 1981 tax returns as "entertainment expenses." 16 Cl.Ct. 584.[1]

We affirm.

## I. Facts

The basic facts are undisputed. As found by the Claims Court, or as the record shows, they are as follows:

Danville is a closely held Virginia corporation owned by George Buchanan, his wife, and their relatives. At all relevant times Buchanan has served as Danville's president.

Danville manufactures custom plywood for use in kitchen cabinets, store fixtures, furniture, wall panels, wall plaques, and similar items. Danville sells to wholesale distributors who in turn sell to architects, mill work houses, and cabinet shops. Each order Danville receives is filled to customer specifications and thus Danville does not maintain a fixed inventory of finished products.

During the years at issue, Danville maintained its books and filed its returns using the accrual method of accounting with a fiscal year ending November 30. On its returns for 1980 and 1981 Danville claimed deductions totaling $103,444.51[2] in connection with a weekend trip for 120 persons to the Super Bowl in New Orleans, Louisiana, from January 23 through January 26, 1981.[3]

To decide who to invite to the Super Bowl weekend, Danville looked at the current and potential income from each customer. Danville did not invite specific individuals; instead, it sent two invitations to the selected customer and instructed the customer to decide whom to send. Buchanan asserts that Danville asked the customers to send individuals with "decision making authority." The majority of the customers sent one individual who was accompanied by that individual's spouse.

Of the people attending the Super Bowl, six were employees of Danville (including Buchanan), five were spouses of the employees, one was the daughter of a shareholder, three were Buchanan's children, and four were Buchanan friends. The remaining individuals were 58 of Danville's customers, 38 spouses of those customers, two children of one of Danville's customers, and three customers of one of Danville's customers.

In making arrangements for the Super Bowl weekend, Danville sent a letter on June 5, 1980, to Abbott Tours, a New Orleans travel agency. In the letter Danville requested accommodations for three nights, Super Bowl tickets, banquet facilities for one night, and a Mississippi River cruise. Notably, Danville did not indicate that the trip was in any way business related and failed to request access to meeting rooms or other facilities appropriate for a business trip. As finalized, the weekend included accommodations at the Sheraton

---

1. Danville listed the entertainment expenses as "advertising expenses" on its returns, allegedly upon the advice of its accountant. At trial Danville's president testified that Danville does not engage in any advertising. The expenses are properly characterized as entertainment expenses.

2. Of this amount $27,151.00 constituted payment for Super Bowl tickets; $30,721.51 for airfare for Danville's employees and guests; $45,300.00 to a tour agency for accommodations and related services; and $272.00 to General Aviation to pick up football tickets. Of the amount claimed the Commissioner disallowed $98,297.83. Of this amount $64,467.51 was disallowed on the 1980 return and $33,380.32 on the 1981 return.

3. Danville hosted another "Super Bowl Weekend" in Pasadena, California during 1980. The Commissioner allowed Danville to deduct the expenses pertaining to this first Super Bowl weekend in Pasadena. In some circumstances, the Commissioner's rulings have been overturned as an abuse of discretion when those rulings treat similarly situated taxpayers differently regarding the same issue. *See International Business Mach. Corp. v. United States*, 343 F.2d 914, 170 Ct.Cl. 357 (1965), *cert. denied*, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966). However, in the instant case, we are presented with a single taxpayer who challenges the disallowance of the expenses relating to the 1981 Super Bowl weekend. The facts relating to the 1981 weekend are significantly different from those relating to the 1980 weekend. Thus, the only facts relevant to this appeal are those relating to the 1981 Super Bowl weekend in New Orleans.

Hotel, a Saturday evening dinner in the hotel's dining room, and an outing to the French Quarter on Saturday night.

On January 13, 1981, Danville sent a letter to the selected customers stating that "Super Bowl weekend is just around the corner." This letter also failed to contain any reference to business meetings or discussions of any kind. Shortly before Super Bowl weekend, Buchanan distributed a memorandum to the Danville employees who would be going to New Orleans. In the memorandum, Buchanan told his employees they should promote certain types of wood, inform the customers Danville could supply 10 ft. panels, and survey the customers regarding their need for Danville to purchase a "cut-to-size" saw.

Upon arrival at the hotel, Danville's customers were met at a hospitality desk in the lobby staffed by family members of Danville's employees. Danville also displayed some of its products in an area adjacent to the lobby. During the weekend Danville's employees met informally with customers.

During the dinner on Saturday evening Danville's customers shared the dining room with other hotel guests, although the customers were segregated in one section of the dining room. There were no speakers or general announcements made at the dinner. Buchanan and Danville's other employees circulated among the tables to speak with their guests. None of the customers placed orders during the weekend although some promised to contact Danville's employees in the future. The only scheduled activity on Sunday was the Super Bowl game and by Monday the guests were preparing to leave.

During an audit of the 1980 and 1981 returns the Commissioner disallowed the deductions claimed by Danville for the expenses incurred relating to Super Bowl weekend. Danville paid the taxes due and filed an administrative claim for a refund which was denied. Danville then brought suit in the United States Claims Court

seeking to recover the $45,217.01 it paid in taxes after its deductions were disallowed.

The Claims Court issued an extensive opinion wherein it discussed the claimed deductions in relation to each class of individual who attended the Super Bowl weekend (*i.e.* employees, spouses, children, friends, and customers). The court held that Danville had failed to meet its burden of proving that the Super Bowl expenses qualified as ordinary and necessary business expenses under § 162 of the Internal Revenue Code. 26 U.S.C. § 162. Furthermore, even if the expenses qualified under § 162 of the Code, they were neither "directly related to" nor "associated with" the active conduct of Danville's business and thus failed to meet the requirements of § 274 of the Code. 26 U.S.C. § 274.

## II. Statutory Scheme

Section 162(a) of the code provides that "[t]here shall be allowed as a deduction all the *ordinary and necessary* expenses paid or incurred during the taxable year in carrying on any trade or business...." 26 U.S.C. § 162(a) (emphasis added). To be deductible under § 162(a) an expenditure must (1) be paid or incurred during the taxable year, (2) be for carrying on any trade or business, (3) be an expense, (4) be a necessary expense, and (5) be an ordinary expense. *Commissioner v. Lincoln Sav. & Loan Ass'n*, 403 U.S. 345, 352, 91 S.Ct. 1893, 1898, 29 L.Ed.2d 519 (1971). Whether an expense meets these requirements is a question of fact. *Commissioner v. Heininger*, 320 U.S. 467, 475, 64 S.Ct. 249, 254, 88 L.Ed. 171 (1943).

The Supreme Court has adopted a liberal definition of the word "necessary." To meet this requirement an expenditure must only be "appropriate and helpful" to the development of the taxpayer's business. *Commissioner v. Tellier*, 383 U.S. 687, 689, 86 S.Ct. 1118, 1119, 16 L.Ed.2d 185 (1966). To qualify as an "ordinary" expense under § 162(a), an expenditure must be a "normal, usual, or customary" practice for the type of business involved.[4]

---

**4.** The term "ordinary" also clarifies the distinction between expenses which are currently de-
ductible and capital expenditures which, if deductible, must be amortized over the useful life

*Deputy v. du Pont*, 308 U.S. 488, 495, 60 S.Ct. 363, 367, 84 L.Ed. 416 (1940). Therefore, ordinary expenses are those which arise out of transactions that are of common or frequent occurrence in the type of business involved. *Welch v. Helvering*, 290 U.S. 111, 113–14, 54 S.Ct. 8, 8–9, 78 L.Ed. 212 (1933).

Prior to 1961, § 162 was the sole statutory provision regulating the deduction of entertainment expenses. In response to what was perceived as widespread abuse of expense accounts and entertainment expenses Congress enacted § 274.[5] This provision is referred to as a "disallowance provision" and its effect is to disallow certain deductions for entertainment expenses which would otherwise be properly deductible under § 162.

Under the stricter limitations of § 274, no deduction for business expenses allowable under § 162 shall be allowed unless the taxpayer establishes that the item was "directly related to" or "associated with" the active conduct of the taxpayer's trade or business. In the case of the latter situation the item for which the deduction is claimed must directly precede or follow a substantial and bona fide business discussion. 26 U.S.C. § 274(a)(1)(A).

Therefore, to be deductible, an entertainment expense must meet the requirements of both § 162 and § 274. First, the expense must be an ordinary and necessary business expense under § 162. Second, the expense must be either "directly related to" or "associated with" the active conduct of the taxpayer's business.

### III. Standard of Review

The Claims Court held that the expenses surrounding the Super Bowl weekend were neither "ordinary and necessary" business expenses of Danville's trade or business

under § 162 nor "directly related to" or "associated with" the active conduct of Danville's business under § 274. Danville acknowledges that both of these findings are factual and must be sustained on appeal unless clearly erroneous. Fed.R. Civ.P. 52(a) ("[f]indings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given the opportunity of the trial court to judge the credibility of the witnesses."). The United States Supreme Court has explained the application of this standard:

> In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citations omitted). Therefore, our decision rests on the Claims Court's resolution of the unique facts in this case.

■ The ruling of the Commissioner enjoys a presumption of correctness and a taxpayer bears the burden of proving it to be wrong. *Welch v. Halvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). This means that the taxpayer must come forward with enough evidence to support a finding contrary to the Commissioner's determination. *Rockwell v. Commissioner*, 512 F.2d 882, 885 (9th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386

---

of the asset. *See Commissioner v. Tellier*, 383 U.S. 687, 689–90, 86 S.Ct. 1118, 1119–20, 16 L.Ed.2d 185 (1966). This latter distinction is not involved in this case.

5. *See* H.R.Rep. No. 1447, 87th Cong., 2d Sess. 16–19 (1962–63 Cum.Bull. 405, 423); S.Rep. No. 1881, 87th Cong., 2d Sess., U.S.Code Cong. & Admin.News 1962, p. 3297 (1962–63 Cum.Bull.

707, 731). Section 274 was also enacted in response to *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir.1930), which allowed a taxpayer to estimate the amount of his entertainment expenses. Today, § 274(d) of the code contains strict substantiation requirements. Because of our disposition of this appeal it is not necessary for us to reach the issue of adequate substantiation.

(1975). Even after satisfying this burden, the taxpayer must still carry the ultimate burden of proof. *Meridian Wood Prod. Co. v. United States*, 725 F.2d 1183, 1189 (9th Cir.1984).

## IV.  Section 162

### A.  *Children and Shareholder*

Three of Buchanan's children and two children of Danville's customers as well as a shareholder of Danville attended Super Bowl weekend at Danville's expense.  In its brief on appeal, Danville concedes that the expenses of these six individuals were not deductible and thus we need not address this class of attendees.

### B.  *Employees' Spouses*

■  Five spouses of Danville employees also attended Super Bowl weekend.  Danville argues that these individuals "manned the hospitality desk all day Saturday and Sunday morning, and otherwise assisted by handling other tasks which needed attention."  Danville also argues that Buchanan was aware that a significant number of the customer representatives would bring their wives and thus he "deemed it appropriate and helpful to have five wives of Danville employees" there to meet and entertain the spouses of the customer representatives.

Treasury regulations provide that when a taxpayer's wife accompanies him on a business trip, her expenses are not deductible unless the taxpayer can adequately show that her presence has a bona fide business purpose.  The wife's performance of an incidental service does not meet this requirement.  26 C.F.R. § 1.162–2(c).  This regulation does not directly apply because the taxpayer here is a corporation and the deductibility involved the expenses not of the corporation president's wife, but of the wives of other employees.  The principle upon which that regulation rests, however, is no less applicable to the wives of employees of a corporate taxpayer than it is to the wife of an individual taxpayer.

Under the standards of this regulation, the Claims Court concluded that the wives of Danville's employees performed at best a social function and thus their expenses were not deductible.  *See Weatherford v. United States*, 418 F.2d 895, 897 (9th Cir. 1969) (spouse's travel expenses not deductible because her "business function" was to be a socially gracious wife, not a professional businesswoman).

Danville cites *United States v. Disney*, 413 F.2d 783, 788 (9th Cir.1969), and *Wilkins v. United States*, 348 F.Supp. 1282, 1284 (D.Neb.1972), as examples of cases which allowed a taxpayer to deduct his wife's expenses.  In *Disney*, the court stated that the "critical inquiries are whether the dominant purpose of the trip was to serve her husband's business purpose in making the trip and whether she actually spent a substantial amount of her time in assisting her husband in fulfilling that purpose."  *Disney*, 413 F.2d at 788.  The court in *Disney* went on to state that "the result reached in an individual case is so dependent upon the peculiar facts of that case, that the decisions called to our attention are of only limited assistance."  *Id.*

In the case at bar, Danville simply did not present enough evidence to the Claims Court to sustain its burden of establishing that the spouses of Danville's employees performed a bona fide business purpose and not merely incidental services.  *See Meridian Wood Prod. Co. v. United States*, 725 F.2d 1183 (9th Cir.1984) (expenses of corporation's president's spouse not deductible because her primary purpose was to socialize with other wives of business associates).  The record leaves one with the overall impression that the wives of the employees went along for fun and merely helped out when they could.

### C.  *Customer Representatives and Spouses*

■  As stated previously, to qualify as an "ordinary and necessary" business expense under § 162(a) an expenditure must be both "common and accepted" in the community of which Danville is a part as well as "appropriate" for the development of Danville's business.  *See Welch v. Helvering*, 290 U.S. 111, 113–14, 54 S.Ct. 8,

8–9, 78 L.Ed. 212 (1933); *Commissioner v. Tellier*, 383 U.S. 687, 689, 86 S.Ct. 1118, 1119, 16 L.Ed.2d 185 (1966). The Claims Court found that Danville failed to carry its burden of proof to establish that the expenses for the customer representatives met these requirements. In support of this conclusion the Court cited the testimony of Will Gregory, General Manager for Central Wholesale Supply, one of Danville's customers. Mr. Gregory testified that he had attended seminars hosted by the National Building Materials Distributors Association which consisted of booths manned by vendors where the attendees could talk privately about the company's products.

Danville argues that nothing could be more "ordinary, necessary, usual, customary, common or important in a manufacturing business than efforts to promote products and increase sales." We agree that this is true as a general proposition. However, what is at issue in this case is the manner in which Danville attempted to promote its products and increase sales. The Claims Court stated that the "record inescapably demonstrates that the entertainment ... was the *central* focus of the excursion, with all other activities running a distant second in importance." (Emphasis in original.)

We cannot say the Claims Court finding is clearly erroneous. What business discussions that occurred were incidental to the main event, *i.e.* entertainment for Danville's customers. Similarly, expenses for the customers of one of Danville's customers who attended Super Bowl weekend are not deductible under § 162.

### D. *Danville's Employees*

■ The treasury regulations provide that only traveling expenses which are reasonable and necessary to the conduct of the taxpayer's business and which are directly attributable to it may be deducted. 26 C.F.R. § 1.162–2(a). The Claims Court held that Danville failed to establish that the expenses of its employees were attributable to its business, and that the trip was undertaken primarily for business purposes. The court found that none of the correspondence between Danville and Abbott Tours referred to the business nature of the trip. Furthermore, the Claims Court described the agenda distributed by Danville to its employees as little more than a "bootstrapping afterthought."

Danville argues that its employees met with customer representatives throughout the weekend and discussed business. As indicated by the Claims Court, only two of the six Danville employees who attended the Super Bowl weekend testified. Thus, the Court could not ascertain how the other four employees spent their time. In addition, the three customer representatives who testified indicated that the discussions which did occur took place "whenever we found [Buchanan] ... and whenever we could catch him." In light of this evidence the Claims Court concluded that Danville had failed to carry its burden of proof of demonstrating that the trip was undertaken for bona fide business purposes or that the expenses were directly attributable to Danville's business.

Danville argues that these quotes of the customer representatives were taken out of context and the full quotes indicate that the representatives talked to Buchanan whenever he was not engaged in discussions with other customers. Accepting Danville's version as true, once again we must agree with the Claims Court that Danville failed to present sufficient evidence to satisfy its burden of proof. The Super Bowl weekend appears to have been little more than a group social excursion with business playing a subsidiary role.

On the narrow facts of this case, we hold that the decision of the Claims Court that Danville failed to satisfy its burden of proof that the Super Bowl expenses were "ordinary and necessary" business expenses under § 162(a) of the Code is not clearly erroneous.

In view of our holding that Danville has not met its burden relative to § 162(a), any discussion of § 274 is unnecessary.

## V. Conclusion

We conclude that, on the unique facts of this case, Danville has failed to demonstrate that the findings of the Claims Court are clearly erroneous.

The judgment of the Claims Court is in all aspects

AFFIRMED.