**Francis E. YOUNG, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–90.**

United States Court of Veterans Appeals.

Jan. 25, 1993.

Rick Surratt (non-attorney practitioner) was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and John D. McNamee, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Associate Judges.

IVERS, Associate Judge:

The veteran, Francis E. Young, seeks review of a November 28, 1990, Board of Veterans' Appeals (BVA) decision denying him status as a prisoner of war (POW). The BVA affirmed the denial of P.O.W. status because the veteran's internment by a neutral country, Sweden, was not compa-

rable to internment by enemy nations or forces. The Secretary of Veterans Affairs (Secretary) made this determination pursuant to the governing statute, 38 U.S.C. § 101(32)(B). The veteran argues that the Secretary's interpretation is contrary to both the statute and the controlling regulation, 38 C.F.R. § 3.1(y)(2) (1991). The Court holds that the BVA did not provide adequate reasons or bases to support its determination that the hardships suffered during internment in Sweden were not comparable to the hardships suffered by veterans who had been interned as P.O.W.'s by enemy nations or forces. Accordingly, we vacate the BVA decision and remand the case for readjudication consistent with this opinion.

## I. BACKGROUND

The veteran served on active duty from October 1942 until November 1945 and then again from October 1950 until July 1952. R. at A–1, 1. During his first enlistment (World War II), he served as a flight engineer on the crew of a B–24 bomber, obtaining the rank of Staff Sergeant. R. at A–2.

In June 1944, the veteran's aircraft was damaged by enemy anti-aircraft fire, and was forced to crash-land in Sweden. The veteran was interned in Sweden for a period of nine months. During the first two to three months of captivity, the veteran was interned at a Swedish prison camp where he alleges sanitary conditions, heating conditions, and food were inadequate. During that same period, he was allowed no contact with family or with anyone outside of the prison. He was then transferred to a Swedish air base where conditions were better, and he was allowed weekend passes. He remained interned there until March 9, 1945, when he was repatriated. R. at 198–99.

In December 1945, the veteran applied for service connection for malaria, weak ankles, and weak feet. R. at 21–22. He was granted service connection only for the malaria. R. at 23. In 1982, he applied for status as a P.O.W. R. at 38. His claim was denied as he was not interned by a

hostile power. R. at 118. Although he was sent a Statement of the Case, the veteran did not appeal the decision. R. at 120–23. The veteran reapplied in 1988, after the governing statute had been changed so as to provide benefits for veterans who had been interned by "foreign" governments, as opposed to only "enemy" governments. R. at 206–07. The veteran used the change in the statute as a basis for reasserting his claim. R. at 191–92. The veteran claimed several ailments resulting from his captivity, to include diabetes, bilateral weak ankles, hiatal hernia, nervousness, frostbite of both feet, hearing loss, injury and scar of the hand (result of the crash landing), and impotency. R. at 192. The Department of Veterans Affairs (formerly Veterans' Administration) (VA) Regional Office (RO) denied his claim in December 1989. That decision was based upon a determination that the conditions experienced by the veteran were not equivalent or comparable to those suffered by P.O.W.'s imprisoned by "enemy governments during periods of war." R. at 201–03.

In January 1990, the veteran filed his Notice of Disagreement, and appealed the RO decision. R. at 204–05. During this appeal, he claimed to be suffering from bilateral foot disabilities, diabetes, hiatal hernia, stomach condition, and a bilateral shoulder condition, all as a result of his internment. R. at 214–15. He testified at his personal hearing, arguing that, although the treatment he suffered during his first period of captivity was not inhumane, it was poor treatment. He also testified that he suffered from improper nourishment, psychological distress, and lack of heat. R. at 220–23. The BVA affirmed the RO decision on November 28, 1990. In its affirmance, the BVA determined that even the initial internment was "not shown to have been sufficiently severe as to be comparable to detainment by an enemy government." *Francis E. Young*, BVA 90–05625, at 4 (Nov. 28, 1990). The BVA concluded "that the statutory criteria for establishing prisoner-of-war status for VA purposes are not met." *Id.* The veteran perfected a timely appeal of that decision

to this Court. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## II. ANALYSIS

Although the facts of this case are compelling, it is not the facts which are dispositive. "The facts in this case are essentially not in dispute." Br. of Appellant at 7. Rather, the outcome in this case is determined by interpretation of both the controlling statute and its accompanying regulations. The controlling statute here is 38 U.S.C. § 101(32) (1991), which says:

> The term "former prisoner of war" means a person who, while serving in the active military, naval, or air service, was forcibly detained in the line of duty—
>
> (A) by an enemy government or its agents, or a hostile force, during a period of war; or
>
> (B) by a foreign government or its agents, or a hostile force, under circumstances which the Secretary finds to have been comparable to the circumstances under which persons have generally been forcibly detained or interned by enemy governments during periods of war.

Pursuant to Section 101(32), the Secretary has promulgated the following regulation regarding "prisoner of war" status:

> *Circumstances of detention or internment.* To be considered a former prisoner of war, a serviceperson must have been forcibly detained or interned under circumstances comparable to those under which persons generally have been forcibly detained or interned by enemy governments during periods of war. Such circumstances include, but are not limited to, physical hardships or abuse, psychological hardships or abuse, malnutrition, and unsanitary conditions. Each individual member of a particular group of detainees or internees shall, in the absence of evidence to the contrary, be considered to have experienced the same circumstances as those experienced by the group.

38 C.F.R. § 3.1(y)(2)(i) (1991).

■ It is clear that the statute has given the Secretary discretion to determine whether to grant P.O.W. status to veterans who were not interned by *enemy* governments, their agents, or hostile forces. Therefore, the first issue for this Court to determine is "the scope of review" of such a finding or determination. Section 7262 of title 38 of the United States Code (formerly § 4062) divides the Court's scope of review into two broad categories. Questions or findings of material fact are not subject to de novo review and can be set aside by this Court only "if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4), (c); *see also Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990); *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). On the other hand, conclusions of law may be reviewed de novo, and set aside when such conclusions of law are "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law....'' 38 U.S.C. § 7261(a)(3)(A) (formerly § 4061(a)(3)(A)). Because a decision or finding that a veteran is to be awarded P.O.W. status under 38 U.S.C. § 101(32)(B) is a legal determination, the standard of review is defined by 38 U.S.C. § 7261(a)(3)(A).

■ The veteran relies on two points in making his argument. First, the veteran argues that the regulation is controlling, and that the BVA erred in its decision when it failed to apply the regulation to the case at hand. Br. of Appellant at 7–8; Reply Br. of Appellant at 2–3. The veteran argues, correctly, that P.O.W. status can be established in two ways. First, the VA must accept P.O.W. status when the veteran's armed service grants him P.O.W. status, "unless a reasonable basis exists for questioning it," if detainment or internment was by "an enemy government or its agents." *See* 38 C.F.R. § 3.1(y)(1). Second, the Secretary may determine P.O.W. status, based upon objective criteria. *See* 38 C.F.R. § 3.1(y)(2). The veteran argues that the key language of this regulation is the following:

To be considered a former prisoner of war, a serviceperson must have been forcibly detained or interned under circumstances comparable to those under which persons generally have been forcibly detained or interned by enemy governments during periods of war. *Such circumstances include, but are not limited to, physical hardships or abuse, psychological hardships or abuse, malnutrition, and unsanitary conditions.*

38 C.F.R. § 3.1(y)(2)(i) (emphasis added). Thus, the veteran argues that this regulation established objective criteria based on the *kinds* of hardship suffered, not the *degree* of hardships suffered. Br. of Appellant at 8. We agree because it is undisputed that the veteran, during his first internment, did suffer hardships comparable to those suffered by P.O.W. captives of enemy governments: (1) psychological hardship based upon no communication with outside world, (2) malnourishment, and (3) physical hardship based on inadequate heating and sleeping accommodations. He argues that he has met the criteria of section 3.1(y)(2)(i) and should be awarded P.O.W. status. Br. of Appellant at 7–8.

The veteran reinforces his argument by noting that the BVA decision appears to rely on the fact that the veteran's November 1945 service separation physical examination, found in his service medical records, revealed no "residual" illnesses or diseases as a result of his internment. *Young,* BVA 90–05625, at 3. The veteran accurately points out that the controlling statute with regard to P.O.W. illnesses or diseases specifically does *not* require that there be a record of the internment-related disease or illness. The statute also mandates that such diseases or illnesses are to have an unlimited presumptive period for clinical manifestation. *See* 38 U.S.C. § 1112(b) (formerly § 312(b)).

■ The Secretary has promulgated 38 C.F.R. § 3.1(y)(2) as a means of establishing objective criteria by which to evaluate claims for P.O.W. status. Once a regulation has been adopted, neither the Secretary nor his subordinates can choose to ignore it. "The BVA is not free to ignore regulations which the VA has adopted." *Schafrath v. Derwinski,* 1 Vet.App. 589, 592 (1991) (quoting *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990)); *see also* 38 U.S.C. § 7104(c) (formerly 4004(c)); *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). This Court also said that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Fugere v. Derwinski,* 1 Vet.App. 103, 108 (1990) (quoting *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974)).

Section 3.1(y)(2)(i) of title 38 of the Code of Federal Regulations establishes objective criteria, specifically the *kinds* of hardships that a veteran interned by a foreign government must demonstrate before the Secretary may grant P.O.W. status. The regulation does *not* limit the awarding of P.O.W. status by the Secretary to the specific hardships listed. The veteran has presented undisputed evidence, albeit his own testimony, that he did suffer the specific kinds of hardship spelled out in the regulation, to include physical hardship and psychological abuse. The BVA, however, has ignored 38 C.F.R. § 3.1(y)(2); nowhere in the decision is the regulation even cited, let alone considered. *See Young,* BVA 90–05625, *supra.*

■ It is well established that the BVA must provide adequate "reasons or bases" for its decision. *Gilbert,* 1 Vet.App. at 56–57. "Once a veteran raises a well grounded claim to which a regulation could reasonably apply, the BVA must apply that regulation or give the reasons and bases explaining why it is not applicable." *Schafrath,* 1 Vet.App. at 592; *Payne,* 1 Vet.App. at 87. The BVA decision does attempt to give some specific reasons or bases for its decision. The decision states that P.O.W. status was not awarded because (1) the veteran suffered no malnutrition, (2) the veteran received warm clothing from the U.S. embassy soon after internment, and (3) the veteran's initial hardship internment, with inadequate lodging and clothing, was not during the winter months. *Young,* BVA 90–05625, at 4.

The BVA, however, does *not* provide adequate reasons or bases for its failure to apply section 3.1(y)(2). Further, by ignoring this regulation, with its criteria for determining P.O.W. status, the BVA decision fails to provide adequate reasons or bases as to why this veteran's hardship is not comparable to that suffered by veterans interned by enemy governments and forces.

Therefore, this case must be remanded for a determination by the Secretary on the issue of how this veteran's internment compares with P.O.W. internment by enemy governments, pursuant to the 38 C.F.R. § 3.1(y)(2). The Secretary is free to consider evidence, other than appellant's testimony, relevant to treatment of internees by Sweden during the year before Germany's surrender.

### III. CONCLUSION

For the reasons stated above, the BVA decision of November 28, 1990, is VACATED and the matter is REMANDED for readjudication consistent with this opinion.