**Milton L. HAZZARD, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–380.**

United States Court of Veterans Appeals.

Feb. 26, 1993.

Before FARLEY, Associate Judge.

MEMORANDUM DECISION

FARLEY, Associate Judge:

This is an appeal from a February 20, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied an effective date earlier than October 19, 1988, for assignment of a compensable disability rating for facial scars and which determined that no clear and unmistakable error had occurred in previous rating decisions. A timely appeal to this Court followed. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). On July 28, 1992, appellant filed an informal brief. On November 2, 1992, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings pending a ruling on this motion. Appellant did not file a reply to the Secretary's motion.

## I. BACKGROUND

Appellant had active duty in the United States Marine Corps from December 1957 to December 1967. R. at 1. Appellant's entrance examination indicated that he was physically qualified for enlistment in the Marine Corps with no marked defects. R. at 6. While in the Marine Corps, appellant was involved in two automobile accidents, each of which resulted in facial scarring. R. at 7, 18. In the first accident, which occurred on November 21, 1959, appellant suffered a 6–centimeter, U-shaped scar over his right eyebrow and a small laceration on his chin. R. at 11. In the second accident, which occurred on December 27, 1964, appellant suffered multiple facial wounds, including a 10–centimeter laceration on his neck, a 6–centimeter laceration on the right mandible, a 15–millimeter vertical laceration on the medial portion of the right upper lid with a separation of tissue giving the appearance that the medial third of the upper lid including skin and tarsus was missing, and a 10–millimeter laceration to the cornea of his right eye, resulting in a prolapsed iris. R. at 18. Surgeons at the United States Public Health Service Hospital in Baltimore, Maryland, excised the prolapsed iris and sutured the corneal lacera-

tion and the facial lacerations, and a skin graft was obtained from the right supraclavicular area and placed over the defect in the right upper lid. R. at 18, 20. On July 25, 1967, and October 9, 1967, appellant underwent plastic surgery at the Naval Hospital in Beaufort, South Carolina, to treat his facial scarring. R. at 38, 40. Appellant's discharge examination, conducted on December 11, 1967, revealed a corneal scar with a partial iridectomy, a 4-inch scar under the chin, a 1.5-inch scar on his chin, and an irregular scar at the inner canthus of his right eye. R. at 55.

In a rating decision dated May 10, 1968, the Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) granted service connection for a scar on the forehead, as a residual of the veteran's first automobile accident, but deferred a rating on service connection for a right eye condition and skin graft of the upper right eyelid, as residuals of the second automobile accident, "pending development as to line of duty determination." R. at 62. In a subsequent rating action dated November 1, 1968, the RO granted appellant service connection for aphakia of the right eye, rated as 30% disabling, a scar to the right upper eyelid at the inner canthus, rated as 0% disabling, scars under and on the chin, rated as 0% disabling, a scar on the forehead, rated as 0% disabling, urethritis, rated as 0% disabling, and a scar from a residual burn to the left forearm, rated as 0% disabling, each with an effective date of December 16, 1967. R. at 64. (Aphakia is defined as an "absence of the lens of the eye," *see* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 110 (27th ed. 1988)). In addition, appellant was awarded special monthly compensation under 38 U.S.C.A. § 1114(k) (West 1991) on account of the loss of use of one eye, which had only light perception, also with an effective date of December 16, 1967. R. at 64.

On April 5, 1973, the RO again rated the veteran due to his request for reevaluation of claims for urethritis and prostate conditions. R. at 65. During this reevaluation, the RO determined that appellant no longer had aphakia in the right eye and that his vision had improved to 20/100 (uncorrect-

ed); as a result, the RO reduced appellant's rating for aphakia in the right eye from 30% to 10%. *Id.* Appellant filed a Notice of Disagreement (NOD) with the RO's reduction of his rating, and the RO conducted another eye examination. R. at 67. In a rating decision dated August 24, 1973, the RO reduced appellant's rating for aphakia in the right eye from 10% to 0%; in doing so, the RO noted:

> The current VAH[ospital], Washington, D.C. eye examination shows that the right eye is not aphakic, and never was. The lens is clear and intact. The lids show no swelling—they are normal with a scar over right eyelid, nontender. The fundus is negative. Vision was 20/20 left eye, 20/200 right eye corrected to 20/40. Vision in left eye has improved since the examination of 1–22–73.

R. at 67. Additionally, the RO continued the ratings of 0% for the scar to the right upper eyelid at the inner canthus, the scars under and on the chin, the scar on the forehead, urethritis, and the burn scar to the left forearm. R. at 67–68. In two subsequent rating decisions dated September 26, 1975, and November 19, 1976, the RO continued the noncompensable ratings for each of appellant's disabilities. R. at 69–70, 75.

In January 1978, appellant submitted a VA Form 1–9 (APPEAL TO BOARD OF VETERANS' APPEALS), seeking service connection for the residuals of his two automobile accidents. R. at 87. Appellant appeared at a personal hearing before the BVA on April 21, 1978. R. at 89–93. In a decision dated June 6, 1978, the Board determined that "[t]he veteran's facial scars are not of the severity contemplated for assignment of a compensable ten percent (10%) rating." R. at 96. In support of its decision, the Board noted that "[t]he service-connected scars on the right upper eyelid at the inner canthus, under and on the chin, as well as on the forehead have not altered facial features in such a way as to be more than slightly disfiguring." *Id.* In a rating decision dated December 9, 1982, the RO denied an increased evaluation for appellant's right eye condition, as well as service con-

nection for a left eye condition as adjunct to his right eye condition. R. at 97. The RO noted that "[t]here is no causal relationship between the service connected right eye condition and any pathology in the left eye. *Id.*

In October 1988, appellant sought increased ratings for his claims for facial scarring based upon photographs he submitted (R. at 99) and a May 1988 physical evaluation performed at the Baltimore VA Outpatient Clinic (R. at 100–02). The VA considered the additional evidence and issued a noncompensable rating decision for appellant's facial scars on November 8, 1988; appellant filed an NOD with the decision on November 14, 1988. R. at 104. A Statement of the Case (SOC) was issued to appellant in December 1988. R. at 106–08.

On November 29, 1988, the RO issued another rating decision, determining that there was no clear and unmistakable error in the rating decisions of May 1968 and November 1968 and finding that appellant was not entitled to an increased evaluation for his facial scars. R. at 109–10. On February 8, 1989, appellant filed another Appeal to Board of Veterans' Appeals based upon the RO's failure to specifically list scars on his left cheek, left eyelid, right eyeball and eyelid, and neck. R. at 113. Appellant also alleged that the VA committed clear and unmistakable error in the previous rating actions. *Id.* In support of his claim, appellant submitted a medical report from a private physician, Dr. Herman Robbins, that referred to the right eye scar as "depressed and disfiguring" and the 1.5–inch chin scar as disfiguring with "keloid formation which has contracted and is prominent above the skin." R. at 111. Dr. Robbins also noted that the right eye movements were not impaired, that no diplopia was present, that his conjunctival reflex was within normal limits and that there was no unusual tenderness or induration near the chin scar. *Id.* The RO conducted a special eye examination of appellant on June 1, 1989. R. at 117. Additionally, appellant submitted color photographs of his injuries in furtherance of his appeal. R. at 119–21. In a decision dated August 31, 1989, the RO confirmed the previous

ratings, determining that "[a] review of all evidence of record fails to show compensable evaluations for the veteran's service connected conditions." R. at 124. A Supplemental Statement of the Case was issued to appellant on September 1, 1989. R. at 126–28.

Appellant appeared at a personal hearing before the Board on March 14, 1990. R. at 132–33. In a decision dated July 25, 1990, the BVA granted appellant a 10% rating for his facial scars, determining that "[t]he overall effect of the veteran's facial scars reflects moderate disfigurement." R. at 137. The effective date of the award was set at October 19, 1988. R. at 138. Appellant filed an NOD on September 4, 1990, noting that he disagreed with the effective date for the 10% evaluation for his facial scar claim and asserting that the VA committed clear and unmistakable error in its previous rating actions. R. at 139. In a rating decision dated August 3, 1990, the RO confirmed the rating of 10% for appellant's facial scars and confirmed the noncompensable ratings for appellant's other disabilities. R. at 141. The RO provided appellant with an SOC on the issue of the effective date of his compensable evaluation on October 17, 1990. R. at 143–45. In rating decisions dated September 5, 1990, and March 7, 1991, the RO determined that the effective date of appellant's award was correct and that the past decisions contained no clear and unmistakable error. R. at 160–61.

In its February 20, 1992, decision, the BVA determined that appellant was not entitled to an effective date earlier than October 19, 1988, for an assignment of a compensable disability rating for facial scars. *Milton L. Hazzard*, BVA 92–03522 (Feb. 20, 1992). In support of its decision, the Board noted:

> The question of an earlier effective date on the basis of clear and unmistakable error turns on a narrow technical legal ground. A review of the record, in this case, reveals that while the veteran did have some slight scarring at the time of separation from service, it was not tender and painful nor was it, in the view of

the individuals who rated him, more than slightly disabling. We have reviewed photographs of the veteran (black and white prints received from the veteran in September 1977; color prints received from the veteran in October 1988; color prints from June 1989 VA examination) and other data on file (June 1978 BVA decision in which scars, observed at April 1978 hearing, are described as not more than slightly disfiguring) and it is clear to us that this is a reasonable interpretation of the evidence on file.

It is also clear to us that the veteran has believed, since he sustained the scars in automobile accidents during service, that the scars were more disfiguring than reflected by the assigned disability rating. While we can sympathize with the veteran's awareness of his scars, they are not significantly repugnant nor is there other evidence of moderate disfigurement. The fact that the Board found moderate disfigurement at the time of the July 1990 decision means only that in the rating judgment of that section there was a basis for assigning a compensable evaluation. It is clear, therefore, that reasonable minds could differ as to the exact rating assigned. As the veteran's representative has contended, the criteria for assigning a compensable rating are subjective. This subjectivity allows for variations in rating judgment. In this case, rating judgment has most recently resulted in a compensable evaluation. It was not unequivocally erroneous, however, for previous raters to have assigned a noncompensable rating for essentially similar pathology.

. . . .

... [T]here is no other basis for assigning an effective date earlier than October 19, 1988. It was at this point that the veteran reopened his claim seeking a compensable evaluation, and it was following this reopened claim, that an evaluation was conducted, including color photographs, which led the Board to conclude, in its rating judgment, that a 10 percent disability rating could be assigned. The effective date selected by the originating agency was the date of the reopened claim and there is no basis in the applicable criteria to assign an earlier date.

*Id.* at 5. In rejecting appellant's arguments based on "clear and unmistakable error" in the rating actions below, the Board noted:

It is our conclusion, therefore, that the decisions entered in this case have been within the rating judgment of rating personnel. There is nothing to suggest that previous decisions were unequivocally in error. As such, there is no basis for assigning an earlier effective date on the basis of clear and unmistakable error.

*Id.*

## II. ANALYSIS

■■■ The law governing the appropriate effective date for an award of increased compensation is well settled. 38 U.S.C.A. § 5110(b)(2) (West 1991) provides:

The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date.

*See also* 38 C.F.R. § 3.400(*o*)(2) (1992) (to the same effect). Accordingly, this Court has held that "evidence in a claimant's file which demonstrates that an increase in disability was 'ascertainable' up to one year prior to the claimant's submission of a 'claim' for VA compensation should be dispositive on the question of an effective date for any award that ensues." *Quarles v. Derwinski*, 3 Vet.App. 129, 135 (1992).

■■■ Here, the BVA concluded that the veteran's facial scarring did not become 10% disabling until October 19, 1988, the date when the veteran "reopened" his claim seeking a compensable evaluation for facial scars and following which the veteran underwent further medical evaluations and submitted additional color photographs which led the Board to conclude, in its rating judgment, that a 10% disability rating was warranted. (As this Court has previously noted, "[t]he VA's use of the

term 'reopened' does not accurately reflect the nature of the claim since a claim for an increased rating is a 'new claim.'" *Quarles*, 3 Vet.App. at 133 (citing *Proscelle v. Derwinski*, 2 Vet.App. 629, 631 (1992)). This Court has held that "[r]esolution of the question of whether the Board accurately determined the effective date requires the Court to decide whether the Board erred in its factfinding." *Quarles*, 3 Vet.App. at 135. In reviewing a finding of fact made by the Board, the Court can only "hold unlawful and set aside such finding if the finding is clearly erroneous." 38 U.S.C.A. § 7261(a)(4) (West 1991); *see Lovelace v. Derwinski*, 1 Vet.App. 73 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert*, 1 Vet.App. at 53. Thus, if there is, within the record of this case, a plausible basis for the Board's finding that the evidence in the veteran's file did not, prior to October 19, 1988, satisfy the criteria for a 10% rating, that finding must necessarily stand. *See Quarles, supra*.

█ Based on a review of the record, the Court is unable to conclude that the Board's finding that the earliest effective date could not precede October 19, 1988, is clearly erroneous. Under the VA's schedule of ratings for skin conditions, set forth at 38 C.F.R. § 4.118, diagnostic code (DC) 7800 (1992), a 0% rating is awarded where there is only slight disfiguring. *Id.* A 10% evaluation requires moderate disfiguring. A higher 30% evaluation requires severe disfiguring, "especially if producing a marked and unsightly deformity of eyelids, lips, or auricles." *Id.* As the Board noted in its February 1992 decision, although a review of the record indicates that appellant had some slight scarring at the time of separation from service, there is nothing in the record, prior to October 19, 1988, to indicate that appellant's scarring was more than "slightly disfiguring" or such that a compensable rating was warranted. *Haz-*

*zard*, BVA 92–03522, at 4. It was only after appellant reasserted his claim for facial scars in October 1988, was reexamined and photographed again in 1990, and appeared at an informal hearing before the BVA in March 1990, that the Board subjectively determined that appellants' scars were moderately disfiguring such as to warrant a 10% rating. *Id.* Since there is a plausible basis in the record for the Board's determination regarding the appropriate effective date for appellant's facial scarring claim, the Board's decision will be affirmed.

█ The Court now turns to the veteran's claim that the RO committed clear and unmistakable error by denying service connection for his facial scars in its May and November 1968 rating decisions. *See* R. at 109–10. In its February 20, 1992, decision, the Board concluded that the May and November 1968 RO decisions did not contain clear and unmistakable error. *Hazzard*, BVA 92–03522, at 4–5. The Board noted that the "[p]rior rating decisions by the RO of May and November 1968 denied a compensable evaluation for facial scars on the basis that they were asymptomatic and no more than slightly disfiguring." *Id.* at 3. Upon reviewing the record, the Court finds that the BVA's decision on the issue of clear and unmistakable error was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc); 38 U.S.C.A. § 7261(a)(3)(A) (West 1991) and 38 C.F.R. § 3.105(a) (1992).

## III. CONCLUSION

Upon consideration of the record, appellant's informal brief, and the Secretary's motion for summary affirmance, the Court holds that appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal. *Gilbert*, 1 Vet.App. at 52–53; *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States*, 899 F.2d 3 (Fed.Cir.1990). The Court also is satisfied that the BVA deci-

sion meets the "reasons or bases" requirements of 38 U.S.C.A. § 7104(d)(1) (West 1991), and the benefit of the doubt doctrine of 38 U.S.C.A. § 5107(b) (West 1991). *See Gilbert, supra.* Summary disposition is appropriate. *See Frankel v. Derwinski,* 1 Vet.App. 23 (1990). Accordingly, the Secretary's motion for summary affirmance is granted and the February 20, 1992, decision of the Board of Veterans' Appeals is AFFIRMED.