NEIL AND SHARON ANDREWS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Andrews v. Commissioner
Docket No. 2486-91
United States Tax Court
T.C. Memo 1992-668; 1992 Tax Ct. Memo LEXIS 708; 64 T.C.M. (CCH) 1339; November 18, 1992, Filed Decision will be entered under Rule 155. For Neil and Sharon Andrews, pro sese. For Respondent: Andrew J. Horning. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioners' Federal income tax for tax years 1987, 1988, and 1989 in the respective amounts of $ 4,340, $ 1,974, and $ 1,861. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Chandler, Arizona, when they filed their petition. The issues for our decision are: (1) Whether long-term disability payments received by petitioner Sharon Andrews (Mrs. Andrews) for tax years 1987, 1988, and 1989 constitute taxable income; (2) whether petitioners are entitled to claim deductions for $ 6,470 in legal fees incurred in recovering Mrs. Andrews' Social Security disability benefits and for $ 1,765 *709 withheld from Mrs. Andrews' disability payments as reimbursement to Metropolitan Life Insurance Company; and (3) whether the recovery of Social Security benefits constitutes taxable income. Mrs. Andrews worked for the Arizona Department of Economic Security (Arizona DES) from 1975 until she became disabled in 1981. She developed phlebitis, was hospitalized, and was unable to work after October 31, 1981. At that point, she had used all her vacation and sick leave and had to take a 6-month leave without pay while her employer made a determination as to her disability. Mrs. Andrews was covered by disability insurance through a group policy with Metropolitan Life Insurance Company (Met Life) maintained by Arizona DES. For the 6-month period of her leave without pay, from November 1, 1981 through April 30, 1982, she was required to pay the premiums for her disability insurance in the total amount of $ 7.20. She was not aware of the fact that she had a right to reimbursement for these premium payments. Mrs. Andrews began receiving disability payments from Met Life in May 1982 equal to 2/3 of her salary. She received Wage and Tax Statements from the State of Arizona Department of *710 Administration, Personnel Division, in the amounts of $ 10,196 for 1987, $ 7,057 for 1988, and $ 7,057 for 1989. She did not report these amounts as taxable income. She did not report her disability payments as taxable income for tax years 1982, 1983, 1984, and 1986, but did report them as taxable income for 1985. Benefits under the Met Life policy were integrated with Social Security benefits so that Met Life's benefits were reduced dollar-for-dollar by the Social Security payments to which Mrs. Andrews was entitled. Mrs. Andrews was initially denied Social Security disability benefits and was required by Met Life to undertake legal action to recover them. She succeeded in 1987 in establishing her disability status with Social Security. In so doing, she incurred total legal fees of $ 6,470. Mrs. Andrews received $ 19,427.60 from Social Security in 1987 and reported $ 9,618 as taxable income. The parties agree that 50 percent of these Social Security benefits (if properly treated as such) are includable in gross income. The legal fee of $ 6,470 was included in the $ 19,428 in Social Security benefits which petitioners reported on their 1987 income tax return and was paid *711 directly to Mrs. Andrews' attorney by Social Security. Mrs. Andrews was required to reimburse Met Life for the entire amount of her recovery of prior years' benefits from Social Security, including the amount of the attorney's fees. Beginning in 1987, Met Life recouped its excess payments in prior years by exercising a right of setoff: Met Life withheld the full amount of each month's payment to Mrs. Andrews until her debt to Met Life was fully repaid. Consequently, Met Life withheld all Ms. Andrews' disability payments until it had recovered $ 19,427.60. Respondent determined in the notice of deficiency that the entire amount of Mrs. Andrews' disability payments from Met Life constitutes taxable income. Although petitioners paid the insurance premiums for the 6-month period of Mrs. Andrews' leave without pay, respondent determined that petitioners had a right to reimbursement which they did not pursue and that, consequently, all premium payments were attributable to employer contributions. Petitioners argue that, since they were paying the premiums for Mrs. Andrews' disability insurance at the time she began to receive disability payments, the payments are not taxable income. *712 Petitioners contend that, if a right to reimbursement exists, they did not receive adequate notice of it and that lack of notice constitutes a defense to the taxability of the income. In the notice of deficiency, respondent determined that petitioners were entitled to claim a deduction for 1/2 of their legal fees. In an Amended Answer, respondent alleged that no deduction was allowable for legal fees, as they were fully reimbursed in 1987. Respondent also alleged that petitioners were entitled to claim a deduction for 1/2 of Met Life's setoff against Mrs. Andrews' 1987 disability payments. Petitioners' position is that the entire amount of the setoff is deductible if the disability income is taxable; on the other hand, petitioners argue that if we find the income to be non-includable in gross income, then the setoff is not deductible. In general, respondent's determinations are presumed to be correct, and petitioners have the burden of proving that they are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Respondent, however, has the burden of showing the correctness of increases in deficiencies asserted in the Amended answer. *713 Rule 142(a). Gross income does not include amounts received through accident or health insurance for personal injuries or sickness, other than amounts received by an employee to the extent attributable to contributions by the employer which were not includable in the gross income of the employee. Sec. 104(a)(3). [1]Section 105(a) coordinates with section 104, providing that, with certain exceptions not relevant to this case, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts are attributable to contributions by the employer which were not includable in the gross income of the employee. In Trappey v. Commissioner, 34 T.C. 407 (1960), we held that disability income is received through accident or health insurance for personal injuries or sickness within the meaning of section 104(a)(3). Hence the provisions in sections 104 and 105 dealing with amounts received through health insurance apply to determine whether Mrs. Andrews' disability benefits from Met Life constitute taxable income, and the key question is whether or to what extent the *714 premiums were paid by Arizona DES and not included in petitioners' gross income. On the basis of the record in this case, we find that Mrs. Andrews' employer paid all her disability insurance premiums with the exception of the premiums for the 6-month period of her leave without pay. We are not persuaded by petitioners' claim at trial that they paid 50 percent of the premiums during the period *715 of Mrs. Andrews' employment. The Met Life policy was a group insurance contract between Met Life and Arizona DES. Benefits were provided to employees by Arizona DES on a 100-percent non-contributory basis. This was not a policy purchased in part by employee contributions. Petitioners did not at any time include the premiums paid by Arizona DES in their taxable income, as required for the income to be nontaxable under section 104(a)(3). Petitioners received a letter dated October 16, 1989, from John S. Hall of Arizona DES informing them that they had a right to reimbursement for the premiums they paid. This letter states: This coverage was provided for all State employees who were "on the payroll" at no cost to the employee. Employees who were on leave without pay (LWOP) status due to the depletion of their paid annual and sick leave were asked to pay the premium for continued LTD coverage until the approval of their claim. Upon approval, the employee no longer was asked to pay for LTD coverage and any monies actually paid were to be refunded. The actual practice at the inception of the LTD program for State employees is difficult to document, and, at times, refunds were *716 not made. The refund of any premium was processed and paid by the Department of Administration, Finance Division. Information regarding a specific refund may be requested through that Agency. This letter not only notified petitioners of a right to reimbursement, but provided the name of the agency responsible for paying such reimbursement. The fact that at the program's inception some employees may not have been reimbursed does not negate the availability of reimbursement. Petitioners received another letter from Arizona DES dated January 15, 1990, giving further instructions on how to apply for a refund of the premiums which they had paid. We are sympathetic with Mrs. Andrews' plight as, in addition to becoming disabled, she has encountered difficulties in obtaining her disability benefits. The application of the law is clear, however, on this point. We hold that Mrs. Andrews' disability payments constituted taxable income to her for tax years 1987, 1988, and 1989. The next issue to be resolved is the deductibility, for 1987, of $ 1,765, the amount by which Met Life reduced Mrs. Andrews' disability benefits for that year due to her recovery of Social Security benefits. *717 Met Life was obligated to pay Mrs. Andrews' disability benefits equal to 2/3 of her salary, but that amount was to be reduced by any Social Security disability benefits to which she was entitled. Hence when Mrs. Andrews received her Social Security disability payments attributable to the years 1983 through 1986, Met Life claimed a right of setoff. Instead of requiring Mrs. Andrews to immediately pay over the amount of her recovery, Met Life began in 1987 to withhold disability payments from Mrs. Andrews until it had recouped its previous overpayment. We call attention to the fact that petitioners did not make any out-of-pocket payments to Met Life. Both petitioner and respondent endeavor to apply section 1341, though they differ in the way they would apply it. Section 1341 provides two alternative computations of tax in a case where a taxpayer restores an amount in excess of $ 3,000 formerly included in income under claim of right. The regulations provide the following definitions: For the purpose of this section "income included under a claim of right" means an item included in gross income because it appeared from all the facts available in the year of inclusion that the *718 taxpayer had an unrestricted right to such item, and "restoration to another" means a restoration resulting because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item (or portion thereof). [Sec. 1.1341-1(a)(2), Income Tax Regs.] We note that section 1341 has no application to the deduction claimed for 1987 because the amount in question is less than $ 3,000. Even apart from the $ 3,000 floor, section 1341 has no application here. [2] Section 1341 has two requirements: that an amount was included in gross income in a prior year and that it was "restored" to another because the taxpayer had to repay it at a later date. Neither of these requirements has occurred. Petitioners endeavor to deduct an amount which was at best only partially included in income,[3] and there has been no "restoration", i.e., nothing has been repaid to Met Life by Mrs. Andrews. We reject the contention that, under these facts, there can be a constructive restoration when no actual repayment is made. *719 In 1987, Mrs. Andrews received all the Social Security payments to which she had been entitled for the years 1983 through 1986. At that point, Met Life had paid Mrs. Andrews more than it was obligated to pay, and reduced its payments to her in subsequent years until it had setoff its obligation to Mrs. Andrews by the amount of Mrs. Andrews' obligation to Met Life. The payments which Mrs. Andrews received are properly taken into account in the years in which she received them. There was no constructive restoration to Met Life in 1987 or any subsequent year, as no out-of-pocket payment was made. For the reasons stated above, we hold that petitioners are not entitled to a deduction for amounts withheld in 1987 from Mrs. Andrews' disability payments by Met Life. The final issue for decision is whether petitioners are entitled to claim a deduction in the amount of $ 6,470 for attorney's fees which they expended to obtain Social Security disability benefits. The resolution of this issue depends upon the answers to two additional questions: (1) Whether the amount was expended to obtain taxable, nontaxable, or partially nontaxable income; and (2) whether the reimbursement of this amount *720 by Social Security bars its deductibility. When petitioners received a lump-sum payment of Social Security benefits in the amount of $ 19,428 in 1987, they reported it on line 20a of their Federal income tax return as Social Security benefits, of which they treated $ 9,618 as the taxable amount. The Social Security payment included $ 6,470 in legal fees, which were paid directly to Mrs. Andrews' attorney. Petitioners claimed a deduction for the entire amount of this payment. Section 212(1) allows a deduction for the ordinary and necessary expenses paid for the collection of income. Section 1.212-1(a)(1), Income Tax Regs., limits this deduction to expenses of collecting income required to be included in income for Federal income tax purposes. Section 265(a)(1) provides that no deduction is allowable for expenses allocable to income which is wholly exempt from income tax. Consequently, petitioners are entitled to claim a deduction for their legal expenses only to the extent that the income recovered is subject to Federal income tax. As noted above, the parties agree that 50 percent of any Social Security payments to petitioners are includable in gross income. Both parties have *721 argued at some point that the 1987 Social Security lump-sum payment lost its character and should be treated for tax purposes as a disability payment. We think this contention is erroneous. As stated above, the form of all payments in this case accurately reflects their tax character and no convincing argument for any other treatment has been presented. The appropriate time for cash basis taxpayers to recognize income is when it is received. Any attempt to recharacterize the payments in question would distort the reflection of petitioners' income for tax purposes. Respondent determined in the Amended Answer that none of Mrs. Andrews' legal expenses were deductible because they were reimbursed by Social Security. Fifty percent of this amount is includable, however, in petitioners' gross income; consequently 50 percent of the legal expenses are deductible under section 212(1). United States v. Disney, 413 F.2d 783 (9th Cir. 1969) (holding that reimbursement to taxpayers of ordinary and necessary business expenses is includable in income and gives rise to a deduction). Decision will be entered under Rule 155. Footnotes
1. We reject petitioners' contention that this case falls within sec. 104(a)(2) as involving damages received on account of personal injuries or sickness. Sec. 1.104-1(c), Income Tax Regs., explains that sec. 104(a)(2) applies to amounts received through prosecution of a legal suit or action based upon tort or tort-type rights. Despite the fact that petitioners were obliged to sue to obtain Social Security disability benefits, the benefits from Met Life do not constitute "damages" from a tortious injury. Rather, they are amounts received through accident or health insurance within the meaning of secs. 104(a)(3) and 105(a)↩.
2. In claiming a deduction for the amount of their foregone benefits, petitioners were following advice contained in a letter they received from Met Life. ↩
3. Petitioners did not include on their gross income the disability payments from Met Life in 1983, 1984, or 1986; they reported as income only the payments received in 1985.↩