T.C. Summary Opinion 2017-82

UNITED STATES TAX COURT

KELLY BUTLER, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29230-13S L.                    Filed November 9, 2017.

Kelly Butler, pro se.

<u>Jeremy D. Cameron</u>, <u>Peter T. McCary</u>, and <u>A. Gary Begun</u>, for respondent.

SUMMARY OPINION

LEYDEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]All section references are to the Internal Revenue Code (Code), as

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

The Internal Revenue Service (IRS)[2] Office of Appeals (Appeals Office) issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) dated October 25, 2013, and a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (supplemental notice of determination) dated December 4, 2015. The notice of determination and the supplemental notice of determination sustained a proposed levy with respect to petitioner's unpaid 2010 Federal income tax liability. Petitioner invoked the Court's jurisdiction by timely filing a petition for review of the determination pursuant to section 6330(d)(1).[3] The issues for decision are: (1) whether petitioner may amend her originally filed

---

[1](...continued)
amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]The Court uses the term "IRS" to refer to administrative actions taken outside of these proceedings. The Court uses the term "respondent" to refer to the Commissioner of Internal Revenue, who is the head of the IRS and is respondent in this case, and to refer to actions taken in connection with this case.

[3]On February 28, 2014, the Court ordered that correspondence received November 27, 2013, from petitioner be filed as of that date as the petition in this case and that the petition filed December 16, 2013, be filed as the amended petition in this case.

2010 Federal individual income tax return (original 2010 tax return) to claim the filing status of married filing jointly; (2) the amount of Social Security disability benefits (benefits) petitioner received from the Social Security Administration (SSA) during 2010; (3) the portion of the benefits petitioner received that is taxable for 2010; and (4) whether the Appeals Office abused its discretion in sustaining the proposed levy.

For reasons stated herein, the Court holds that: (1) petitioner may not amend her original 2010 tax return to claim the filing status of married filing jointly; (2) during 2010 petitioner received $84,956 of benefits from the SSA (hereinafter total benefits); (3) $14,269 of the total benefits is taxable to petitioner for 2010 (hereinafter taxable benefits); and (4) the Appeals Office did not abuse its discretion in sustaining the proposed levy.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. Petitioner resided in Florida when she timely filed her petition.

## I. Benefits Paid to Petitioner

In 2010 petitioner received a Form SSA-1099, Social Security Benefit Statement, from the SSA that reported total benefits of $84,956 as follows:

|   Benefit | Amount |
| --- | --- |
| Paid by check or<br>direct deposit | $65,518.37 |
| Medicare Part B<br>premiums deducted<br>from benefits | 884.00 |
| Attorney's fees | 18,553.63 |

The total benefits included the following amounts paid in 2010 for 2006 through 2009:  (1) $13,720 for 2006, (2) $17,016 for 2007, (3) $17,400 for 2008, and (4) $18,408 for 2009.[4]  The benefits directly deposited into petitioner's bank account consisted of a lump-sum payment of $55,660.87 deposited on July 6, 2010, and payments totaling $9,857.50 deposited approximately monthly from mid-July through December 2010.

By letter dated July 24, 2012, the SSA informed petitioner that she would "soon receive a check for $12,553.63 because we are sending you money which we did not have to use to pay an attorney [sic] fee."  This amount was part of the $18,553.63 the SSA reported as attorney's fees in the 2010 Form SSA-1099.  The SSA reported in a 2012 Form SSA-1099 payments to petitioner totaling $19,078 in 2012 but not the $12,553.63 for the unpaid attorney's fees.

[4]The record does not show what portions, if any, of the amounts attributable to 2006 through 2009 were allocated to Medicare Part B premiums or attorney's fees.

II.   Petitioner's Original 2010 Tax Return

Petitioner, assisted by a commercial tax return preparation service, filed her

original 2010 tax return late, on August 6, 2012.  In that tax return petitioner

claimed the filing status of married filing separately and entered the name and

Social Security number of her spouse, James Butler.[5]  Petitioner reported wages of

$3,015; total benefits of $84,956 on line 20a; and taxable benefits of $14,269 on

line 20b.[6]  Petitioner claimed a standard deduction of $5,700 and reported a total

tax of $793.  Petitioner claimed a making work pay credit of $187 and reported an

amount owed of $606.  Petitioner did not submit any payment with the original

2010 tax return.

On October 1, 2012, the IRS notified petitioner it had disallowed the

claimed making work pay credit as a math error.  The record does not indicate

whether petitioner challenged the disallowance.  On the same day the IRS assessed

the total tax of $793 shown in the tax return, an addition to tax under section

6651(a)(1) for failure to timely file the tax return, an addition to tax under section

---

[5]During 2010 petitioner was married to Mr. Butler.

[6]Petitioner calculated the amount of taxable benefits for 2010 on the basis of a filing status of married filing separately and having lived apart from Mr. Butler for all of 2010.  See sec. 86(a)(2)(A), (c)(1)(A), (2)(A).  Respondent did not challenge this calculation or that petitioner had lived apart from Mr. Butler for all of 2010.

6651(a)(2) for failure to timely pay the tax shown on the tax return, and interest. The IRS mailed a notice and demand for payment letter to petitioner at her last known address. Petitioner did not pay the balance due.

III.    Mr. Butler's 2010 Tax Return

Mr. Butler filed a 2010 Federal individual income tax return and also claimed the filing status of married filing separately. The IRS subsequently issued a notice of deficiency to Mr. Butler for 2010, in response to which he filed a petition with the Court seeking redetermination of the deficiency. He settled his case for 2010 by stipulated decision. Butler v. Commissioner, T.C. Dkt. No. 7993-13S (Dec. 6, 2013).

IV.    Request for Collection Due Process Hearing

The IRS mailed petitioner at her last known address a Notice of Intent to Levy and Notice of Your Right to a Hearing on April 22, 2013, with respect to the unpaid tax liability for 2010. Petitioner timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing. Petitioner checked the boxes for "Filed Federal Tax Lien" and "Proposed Levy or Actual Levy" as the bases for the

collection due process (CDP) hearing request.[7] At the time petitioner filed the Form 12153 the IRS had not filed a notice of Federal tax lien for the unpaid tax liability for 2010. In the Form 12153 petitioner requested an offer-in-compromise as a collection alternative and a withdrawal of lien, asserting "No Tax Due". Petitioner also wrote the following in the "other" section of the Form 12153: "(1) Right to File Jointly[,] (2) Disability, (3) S.S. Pay Reported is [w]rong by [$]30,000 [for] year 2010". Mr. Butler signed the Form 12153 as petitioner's representative.

By letter dated June 6, 2013, the IRS informed petitioner that it had received the Form 12153 and was forwarding it to the Appeals Office. By letter dated July 8, 2013, the Appeals Office informed petitioner it had received her request for a CDP hearing. The Appeals Office settlement officer (SO) assigned to petitioner's CDP hearing request sent petitioner a letter dated July 26, 2013, to schedule a telephone CDP hearing for August 27, 2013. The SO informed petitioner that if the date and time were not convenient or if she wanted a face-to-face conference at the Appeals Office closest to her, she should contact the SO by August 12, 2013.

---

[7]Petitioner checked the box to request an equivalent CDP hearing, but the record shows, and the parties do not dispute, that she timely requested a CDP hearing.

The SO also informed petitioner in that letter that: (1) she could not dispute the underlying tax liability because it was the result of a tax return she had filed voluntarily; (2) she could file an amended tax return for consideration; (3) Mr. Butler had to complete and file a Form 2848, Power of Attorney and Declaration of Representative, to represent her before the IRS; and (4) in order for the SO to consider the requested collection alternative, she had to submit by August 12, 2013, copies of her filed 2011 and 2012 tax returns, a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and a Form 656, Offer in Compromise.

V.      Initial CDP Hearing

Petitioner did not contact the SO before the scheduled CDP hearing, submit the requested information, or participate in the scheduled CDP hearing. The SO sent petitioner a letter dated August 27, 2013, because petitioner had not called at the time of the scheduled CDP hearing or submitted the requested information. The SO gave petitioner until September 10, 2013, to submit the requested information and informed her that a determination would otherwise be made by reviewing the administrative file. The SO referred to this letter as the "last chance letter".

On September 3, 2013, petitioner and Mr. Butler called and spoke with the SO and asserted that petitioner was not liable for the total tax reported in the original 2010 tax return. The SO explained that the underlying tax liability was the result of a tax return petitioner had filed voluntarily and on which she had reported her income. Petitioner and Mr. Butler notified the SO that they had filed an amended Federal income tax return claiming the filing status of married filing jointly, implied that the amended tax return reported no tax due, and stated that the IRS was going to accept the amended tax return once it was signed.

The SO informed petitioner and Mr. Butler that the amended tax return would not be processed by the IRS because Mr. Butler had filed an individual Federal income tax return for 2010, received a notice of deficiency for 2010, and filed a petition with the Court seeking redetermination of the deficiency as to his tax return. The SO informed petitioner that she could not challenge the underlying tax liability. The SO also informed petitioner and Mr. Butler that petitioner was not eligible for an installment agreement or an offer-in-compromise because she had not filed tax returns for 2011 and 2012. Petitioner requested an extension from the September 10, 2013, deadline in the last chance letter to file the tax returns for 2011 and 2012 and an offer-in-compromise.

The SO sent petitioner a letter dated September 3, 2013, to extend the deadline to September 24, 2013, for her to submit the tax returns for 2011 and 2012 and an offer-in-compromise. Petitioner did not submit the requested tax returns or information by the extended deadline. The SO verified that the legal and administrative requirements were met and, on October 25, 2013, issued the notice of determination that sustained the proposed levy with respect to petitioner's unpaid tax liability for 2010.

VI.   Order Remanding to Appeals Office

This case was set for the Court's trial session on January 12, 2015, in Tampa, Florida. Petitioner was not present at calendar call, and instead Mr. Butler appeared on her behalf, to which respondent objected. At the trial session respondent made an oral motion for entry of decision. The Court noted that petitioner had been erroneously informed by the Appeals Office that she could not challenge the underlying tax liability, even though there was a dispute about the amount of her benefits that was subject to tax, and that perhaps this erroneous information had caused her to not submit the requested financial information in support of a collection alternative. The Court asked whether respondent had considered waiving the additions to tax pursuant to Internal Revenue Manual

(IRM) pt. 20.1.1.3.6.1 (Aug. 5, 2014).[8] On January 12, 2015, the Court ordered respondent to report whether petitioner qualified for the first-time abate administrative waiver for the late-filing and late-payment additions to tax and ordered petitioner to file an objection, if any, to respondent's oral motion for entry of decision.

On January 26, 2015, respondent reported that petitioner did not meet the first-time abate administrative waiver requirements for the abatement of the late-filing and late-payment additions to tax because petitioner and Mr. Butler had been assessed an accuracy-related penalty for 2009 in a significant amount. Petitioner did not file a response to respondent's oral motion for entry of decision.

On March 4, 2015, the Court by order denied respondent's oral motion for entry of decision and remanded the case to the Appeals Office for the purpose of affording petitioner a supplemental CDP hearing under section 6330 at which she could challenge her underlying tax liability for 2010 and/or present an alternative to the proposed levy. In that order the Court stated:

---

[8]This section of the Internal Revenue Manual (IRM) (hereinafter referred to as the first-time abate administrative waiver) states that it may be appropriate to abate additions to tax for failure to timely file and failure to timely pay when the taxpayer "has no prior penalties * * * for the preceding 3 years * * * and has filed, or filed a valid extension for, all currently required returns and paid, or arranged to pay, any tax due." IRM pt. 20.1.1.3.6.1(1) (Aug. 5, 2014).

SO Smith informed petitioner that she could not challenge her underlying liability as part of the administrative review process because she "self-reported" the tax due on her return. On October 25, 2013, the Appeals Office issued to petitioner a Notice of Determination for 2010 stating that she was barred from challenging the existence or amount of her underlying liability and that respondent would proceed with the proposed levy.

\* \* \* \* \* \* \*

There is no indication in the administrative record that petitioner was issued a notice of deficiency for 2010 or that she otherwise had a prior opportunity to dispute the amount of her tax liability for that year. On this record, we conclude that the Appeals Office erred in denying petitioner the opportunity to challenge her underlying liability during the administrative review process.

VII. Supplemental CDP Hearing and Supplemental Notice of Determination

The SO sent petitioner a letter dated March 19, 2015, to schedule a supplemental telephone CDP hearing for April 20, 2015. In that letter the SO informed petitioner that during that supplemental CDP hearing petitioner could raise collection alternatives to the proposed levy, challenges to the appropriateness of the collection action, spousal defenses, if applicable, and challenges to the underlying tax liability. The SO informed petitioner that if she wanted to dispute the total tax reported in her original 2010 tax return, she would have to file a Form 1040X, Amended U.S. Individual Income Tax Return, for 2010 by April 9, 2015. The SO confirmed that at that time petitioner was in filing compliance with all

required tax returns, but the SO informed petitioner that she had to complete a

Form 433-A and Form 656 by April 2, 2015, if she wanted to propose an offer-in-

compromise as a collection alternative.

On March 27, 2015, petitioner faxed to the SO a copy of a 2010 Form

1040X that she had filed with the IRS.[9]  Petitioner attached to the 2010 Form

1040X a proposed 2010 Form 1040, U.S. Individual Income Tax Return,

(proposed 2010 tax return) that reported total benefits of $65,518 on line 20a and

taxable benefits of $8,571 on line 20b, both less than the total benefits and taxable

benefits petitioner had reported in her original 2010 tax return.[10]  The proposed

2010 tax return reported an amount owed of $224, also less than the total tax

petitioner had reported in her original 2010 tax return.  Petitioner included a copy

of a check dated March 3, 2015, for $224 that she had submitted to the IRS with

the 2010 Form 1040X.  The copy of the check was superimposed over the top of

the second page of the copy of the 2010 Form 1040X and obstructed a portion of

_____

[9]The 2010 Form 1040X bears the signature of Mr. Butler with a notation "For Kelly Butler".

[10]The record does not show, and petitioner has not explained, how she calculated the asserted taxable benefits in the proposed 2010 tax return.  Petitioner also reported no wages in the proposed 2010 tax return but reported taxable IRA distributions of $3,015.  The 2010 Form 1040X and the proposed 2010 tax return were prepared by the same commercial tax return preparation service that had prepared petitioner's original 2010 tax return.

the amended tax return. In Part III, Explanation of changes, of the 2010 Form 1040X petitioner wrote: "ONLY PAID BY SS 65585 in 2010".

The SO held the supplemental CDP hearing by telephone on April 20, 2015, with petitioner and Mr. Butler. The SO confirmed that the IRS had received petitioner's 2010 Form 1040X because the payment had posted with a designated code indicating that the payment had arrived with an amended tax return. However, the IRS had not yet reviewed the 2010 Form 1040X. The SO notified petitioner that the underlying tax liability could not be resolved until the IRS reviewed the 2010 Form 1040X.

The SO requested an unobstructed copy of the 2010 Form 1040X from petitioner to forward to the IRS to expedite its processing. Petitioner submitted an unsigned, unobstructed copy of the second page of the 2010 Form 1040X to the SO. The SO forwarded the 2010 Form 1040X to the IRS for processing on June 4, 2015, and again on July 16, 2015.

The IRS notified petitioner in a letter dated September 21, 2015, that the 2010 Form 1040X could not be processed because the income petitioner had reported did not match the income reported by the SSA to the IRS. The letter included IRS tax return transcripts and wage and income transcripts for 2010 for petitioner to review.

The SO also notified petitioner in a letter dated September 30, 2015, that the 2010 Form 1040X had not been accepted and gave her 14 days to submit a new Form 1040X reporting the income the SSA reported she had received in 2010.  In that letter the SO also notified petitioner that she could enter into a collection alternative by contacting the SO within 14 days.  Petitioner neither submitted a new Form 1040X for 2010 nor contacted the SO to discuss a collection alternative.

The Appeals Office issued the supplemental notice of determination, again sustaining the proposed levy.  The SO determined that the amended tax return that petitioner had submitted could not be accepted because it did not report all the income the SSA reported she had received and that petitioner had not shown that the total tax, as reported in her original 2010 tax return, was incorrect.  The SO also rejected petitioner's request for a collection alternative because petitioner had not provided a Form 433-A or a Form 656 as requested.

## Discussion

### I.    Jurisdiction and Standard of Review

Section 6331(a) authorizes the Commissioner to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment.  Section 6331(d) provides that the levy authorized by section 6331(a) may be made with respect to any unpaid tax only

after the Commissioner has notified the person in writing of his intention to make the levy at least 30 days before any levy action is begun. Section 6331 elaborates on section 6331 and provides that the written notice must inform the taxpayer of her right to request a CDP hearing. Sec. 6330(a)(3)(B); sec. 301.6330-1(b)(1), Proced. & Admin. Regs.[11]

If a CDP hearing is requested, the hearing is to be conducted by the Appeals Office. Sec. 6330(b)(1). At the hearing the SO conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise at the CDP hearing "any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses; challenges to the appropriateness of collection actions; and offers of collection alternatives". Sec. 6330(c)(2)(A). Within 30 days after the Appeals Office issues a notice of determination the taxpayer may appeal the determination to the Court. Sec. 6330(d)(1).

---

[11]Petitioner in the Form 12153 requested a withdrawal of a Federal tax lien. However, the record does not indicate that a Federal tax lien was filed at the time petitioner filed the Form 12153. Petitioner did not raise the issue of withdrawal of a Federal tax lien with the SO or in her petition. That issue is not properly before the Court and is deemed conceded. See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. ("In seeking Tax Court review of a Notice of Determination, the taxpayer can only ask the court to consider an issue * * * that was properly raised in the taxpayer's CDP hearing.").

In reviewing an IRS administrative determination in a CDP case, if the underlying tax liability is properly in dispute, the Court reviews the determination regarding the underlying tax liability de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews all other determinations for abuse of discretion. Id. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

II.     Underlying Tax Liability

The underlying tax liability in this case consists of the total tax petitioner reported in her original 2010 tax return, the addition to tax under section 6651(a)(1) for failure to timely file, the addition to tax under section 6651(a)(2) for failure to timely pay, and the interest. See Katz v. Commissioner, 115 T.C. 329, 339 (2000) (finding that the term "underlying tax liability" includes any amount owed by a taxpayer pursuant to the tax laws, including additions to tax and interest). Generally, the Court does not have authority to consider issues not raised before the Appeals Office. Sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Petitioner has consistently challenged the amount of total benefits she received from the SSA and the portion of the total benefits that is taxable to her

for 2010. More specifically, petitioner asserted in her petition and her amended petition that the total tax she had reported in her original 2010 tax return was wrong for two reasons: (1) she was entitled to file an amended 2010 tax return to claim the filing status of married filing jointly with her husband and (2) the SSA incorrectly reported the amount of total benefits she received in 2010 and, as a result, the portion of the total benefits that is taxable to her for 2010 was less than she had reported.

Petitioner, however, did not challenge the additions to tax under section 6651(a)(1) and (2) or the interest in the Form 12153, during the CDP hearings, or in her petition and amended petition. The additions to tax and interest therefore are not properly before this Court. See sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").

A.    Changing Filing Status to Married Filing Jointly

Petitioner argued that her tax liability for 2010 would be reduced by her filing an amended 2010 tax return claiming the filing status of married filing jointly. Petitioner asserted in her amended petition that her total tax for 2010 would have been reduced because she could have used a loss carryforward, presumably attributable to Mr. Butler, if she was allowed to amend her 2010 tax

return to claim the filing status of married filing jointly. The Court does not need to consider whether there are any losses that can be carried forward because petitioner is barred from amending her original 2010 tax return to claim the filing status of married filing jointly.

A married taxpayer may not file a Federal tax return claiming the filing status of married filing jointly if, after claiming the status of married filing separately in a separate tax return, either spouse has been sent a notice of deficiency and either spouse files a petition with the Court with respect to the notice of deficiency. Sec. 6013(b)(2)(B). Both petitioner and Mr. Butler claimed the filing status of married filing separately in their respective tax returns for 2010. Mr. Butler received a notice of deficiency with respect to his 2010 tax return and filed a petition with the Court with regard to his tax return. See Butler v. Commissioner, T.C. Dkt. No. 7993-13S (Dec. 6, 2013). Accordingly, petitioner may not amend her original 2010 tax return to claim the filing status of married filing jointly.

B.    2010 Total Benefits

Petitioner disputes the amount of total benefits she received from the SSA in 2010 and, in turn, the portion of the total benefits that is taxable to her for 2010. Gross income includes all income from whatever source derived unless excludable

by a specific Code provision.  Sec. 61(a).  Benefits are included in gross income.

Sec. 86.  Social Security disability benefits are treated in the same matter as other

Social Security benefits.  See sec. 86(d)(1); Thomas v. Commissioner, T.C. Memo.

2001-120, 2001 Tax Ct. Memo LEXIS 148, at *4.  Benefits generally are included

in gross income for the year in which they are received, even if the benefits are

attributable to prior years.[12]  Secs. 86(e), 451(a).

The SSA reported that petitioner received total benefits of $84,956 in 2010.

Petitioner disagrees.  Petitioner claims that she received only $65,518.37 from

SSA, the amount the SSA directly deposited into her bank account during 2010,

and that she did not receive the amount reported as attorney's fees in 2010.

Petitioner does not address whether the Medicare Part B premiums of $884

constitute amounts received in 2010, and therefore we also deem this issue

conceded.  See Rule 331(b)(4) ("Any issue not raised in the assignments of error

shall be deemed to be conceded.").

---

[12]A taxpayer may make an election with respect to the amount of a lump-sum payment of benefits received during a taxable year in which the portion of the payment is attributable to prior years.  Sec. 86(e).  Petitioner was eligible to make a sec. 86(e) election on her original 2010 tax return because she received a lump-sum payment of benefits during 2010 that was in part attributable to 2006, 2007, 2008, and 2009.  Petitioner did not make a sec. 86(e) election on her original 2010 tax return.  Neither petitioner nor respondent provided a computation showing that petitioner would benefit from a sec. 86(e) election.

With respect to the reported attorney's fees, as a general rule income is taxed to the person earning it even if the right to receive the income is contractually assigned to another person before it is earned. Lucas v. Earl, 281 U.S. 111, 114-115 (1930); Kenseth v. Commissioner, 114 T.C. 399, 412 (2000), aff'd, 259 F.3d 881 (7th Cir. 2001); Banks v. Commissioner, T.C. Memo. 2001-48, 2001 Tax Ct. Memo LEXIS 68, at *21-*25; see also S. Rept. No. 98-23, at 26 (1983), 1983-2 C.B. 328 (stating that the total amount of Social Security benefits received by a taxpayer is not to be reduced by attorney's fees). Under this principle, the amount of the benefits reported as attorney's fees in 2010 is considered an amount received by petitioner, despite the fact that SSA paid her attorney the reported fee amount. Petitioner received a benefit from these funds in the form of payment for services required to obtain her benefits. See Kenseth v. Commissioner, 114 T.C. at 413. The Court concludes that petitioner received total benefits of $84,956 in 2010.[13]

_____

[13]In some circumstances amounts paid for attorney's fees are deductible as a miscellaneous expense in Schedule A, Itemized Deductions. See sec. 212(1). Although the SSA reported the amount of attorney's fees as $18,553.63 for 2010, the amount of the deduction is limited to expenses related to the collection of income which is required to be included in gross income for Federal income tax purposes. Sec. 212(1); sec. 1.212-1(a)(1)(i), (e), Income Tax Regs. The deductibility of the allocable attorney's fees is academic because the amount of the legal fees incurred in securing her benefits (i.e., $3,117, or 16.8% of the attorney's

(continued...)

III.    2010 Taxable Benefits

In her original 2010 tax return petitioner reported $14,269 as the amount of taxable benefits for that year.  See supra p. 5 and note 6.  In the proposed 2010 tax return, attached to the 2010 Form 1040X, petitioner asserted that the amount of taxable benefits for 2010 was less, $8,571.  Petitioner has not explained how she calculated the asserted revised amount of taxable benefits of $8,571.

Consequently, the Court decides that the amount of petitioner's 2010 taxable benefits is $14,269, computed by petitioner as discussed supra note 6 (a computation neither the IRS nor respondent challenged).

IV.    Abuse of Discretion

In deciding whether the SO abused her discretion in sustaining the proposed levy, we consider whether she:  (1) properly verified that the requirements of any applicable law or administrative procedure had been met; (2) considered any relevant issues petitioner had raised; and (3) determined whether "any proposed collection action balances the need for efficient collection of taxes with the

---

[13](...continued)
fees, the same percentage of the benefits required to be included in gross income) is less than the standard deduction for 2010 for married filing separately (i.e., $5,700) claimed in petitioner's original 2010 tax return.  See sec. 212(1); Andrews v. Commissioner, T.C. Memo. 1992-668, 1992 Tax Ct. Memo LEXIS 708, at *13; sec. 1.212-1(a)(1)(i), (e), Income Tax Regs.

legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

It is clear from the Court's review of the record that the SO analyzed the transcript of petitioner's account and verified that the requirements of applicable law and administrative procedure were followed. The SO stated in her case activity report that she had reviewed petitioner's account transcript and confirmed that the "proper assessment was made."

The SO did not abuse her discretion in rejecting petitioner's request for an offer-in-compromise as a collection alternative. The SO informed petitioner that she had to submit a Form 433-A, Form 656, and supporting financial documentation, but petitioner failed to do so. The SO did not abuse her discretion in determining that petitioner was ineligible for a collection alternative under these circumstances. See Bergdale v. Commissioner, T.C. Memo. 2014-152, at *11-*12 ("[T]here is no abuse of discretion when the settlement officer fails to consider a taxpayer's request for an offer-in-compromise when a Form 656 was not filed.").

## Conclusion

The Court sustains the Appeals Office's determination in the notice of determination and the supplemental notice of determination and holds that:

(1) petitioner may not amend her original 2010 tax return to claim the filing status of married filing jointly; (2) petitioner received total benefits from the SSA of $84,956 in 2010; (3) $14,269 of those total benefits is taxable to petitioner in 2010; and (4) the Appeals Office did not abuse its discretion in sustaining the proposed levy.

In reaching the conclusions described herein, the Court has considered all arguments made, and, to the extent not mentioned above, the Court finds them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.